## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CYNTHIA STEPIEN on behalf of herself and her minor child; STAMATIA DIMATOS SCHRECK, on behalf of herself and her three minor children; RYAN CODY, on behalf of himself and his minor child J.C.; ELLY FORD on behalf of herself and her minor child A.F.; GABE McMAHON; M.F.; M.K.N.; K.B.; B.W.; L.R.; J.V.P.; V.P.; D.M.; B.M.; A.M.; and ALL OTHERS SIMILARLY SITUATED,**<br><br>        **Plaintiffs,**<br><br>        **v.**<br><br>**PHILIP D. MURPHY, Governor; ANGELICA ALLEN-McMILLAN, Commissioner of Education; JUDITH M. PERSICHILLI, Commissioner of Health,**<br><br>        **Defendants.** | Civ. No. 21-CV-13271 (KM) (JSA)<br><br>**OPINION & ORDER**<br><br>**(Motion to compel discovery)** |

**KEVIN MCNULTY, U.S.D.J.:**

        This matter comes before this court on plaintiffs' motion to compel discovery (DE 30).[1] Plaintiffs seek documents relating to the formulation of New Jersey Governor Phil Murphy's executive orders ("EOs") requiring masks in the state's schools, in order to bolster their case for a preliminary injunction against enforcement of the EOs. For the following reasons, the motion is

---

[1]        Certain citations to the record are abbreviated as follows:

        DE = docket entry in this case

        Mot. = Plaintiffs' motion to compel (DE 30)

        Opp. = Defendants' brief in opposition to motion to compel (DE 33)

        Reply = Plaintiffs' reply in support of motion to compel (DE 34)

**DENIED** as to Requests (1), (6), and (7), with which defendants have adequately complied, and **DENIED** on grounds of the deliberative process privilege as to Requests (2), (3), (4), and (5).

## BACKGROUND

On July 2, 2021, plaintiffs filed a complaint in this court, requesting that I enjoin executive orders of New Jersey Governor Phil Murphy that require students, employees, and visitors at the state's primary and secondary schools to wear masks to slow the spread of COVID-19 infection. (DE 1.) A first amended complaint was filed a week later. (DE 2.) On August 6, 2021, Governor Murphy issued EO 251, renewing the mask mandate in the state's schools. (DE 11 ¶ 26.) On August 26, 2021, Murphy issued a supplementary EO, partially related to masks in schools, EO 253. (DE 12-2 at 36.) Plaintiffs filed a second amended complaint on August 30, 2021. (DE 11.) That same day, plaintiffs also sought an Order to Show Cause as to Vacating or Staying the EOs. (DE 12.) I ordered the parties to brief the issues and appear for oral argument via videoconference on September 9, 2021. (DE 16.) Based on the parties' briefs and oral argument, I denied the plaintiffs' request insofar as it sought a temporary restraining order immediately suspending the operation of the Eos. (DE 12, 24, 25.) At a post-hearing status conference on September 15, 2021, plaintiffs' counsel stated that he intended to seek discovery from defendants in aid of plaintiffs' application for a preliminary injunction. (DE 28.) Informed that defendants would likely resist discovery requests, I authorized plaintiffs to file what amounts to a preemptive motion to compel, which is currently before the Court. (DE 30.)

Plaintiffs now move to compel the defendants to produce seven categories of materials:

(1) The Governor's file on EO 251 (and that part of EO 253 relating to masking schoolchildren);

(2) Any memoranda, minutes and other documents exchanged within the executive branch that were a part of the consideration

2

or decision-making process that led to the promulgation of the Executive Orders;

(3) Any transcripts of meetings between the Governor and other staff or officials as to the consideration or promulgation of the EOs;

(4) Any communications between the administration and the NJEA or other third parties as to masking of schoolchildren or the basis for entry of EOs 251 and 253;

(5) All medical and scientific studies relied upon or consulted by defendants in the creation or promulgation or continuation of EOs 251 and 253;

(6) Data from the Department of Health as to the number of children in New Jersey with Covid and the number of hospitalizations of children (also including deaths of children) prior to the August 6, 2021 date of entry of EO 251 and thereafter; and

(7) Any studies conducted, performed, commissioned or undertaken by or on behalf of the state or any officer or agency in connection with the development of EO 251 or EO 253 as to (a) the need for masking schoolchildren, (b) the comparison of Covid disease burden between children and adults, (c) the burden of Covid disease in children in school versus other locations; (d) the reasons for excluding unvaccinated adults in other settings from the masking order; and (e) the emotional burden or harm, if any, imposed on schoolchildren by mandatory masking and other COVID-preventative measures.

(DE 30-4.) Defendants responded to some of the discovery requests, but refused to turn over much of the requested material, claiming in their opposition brief that the material was protected by the deliberative process privilege. (Opp. at 17–23.) Plaintiffs submitted a reply brief (DE 34), and the issue is now fully briefed and ripe for decision.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides the courts with broad discretion in the management of the discovery process. *See* Fed. R. Civ. P. 26. Under the Rules, a party generally may not seek discovery "before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). In this case,

however, I instructed plaintiffs to file a motion to compel to seek limited, expedited discovery targeted to the issues likely to be relevant to a preliminary injunction. In general, expedited discovery "can help to ensure a clear and focused factual record" for a preliminary injunction hearing. *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 2021 WL 1740582, at *2 (M.D. Pa. May 3, 2021) (quoting *Kone Corp. v. ThyssenKrupp USA, Inc.*, 2011 WL 4478477, at *7 (D. Del. Sept. 26, 2011)). Fuller discovery may be allowed at a later stage of the case, but discovery requests at this point should be "narrowly tailored to fit the needs of a preliminary injunction hearing." *Better Packages, Inc. v. Zheng*, 2006 WL 1373055, at *3 (D.N.J. May 17, 2006) (citing *Ent. Tech. Corp. v. Walt Disney Imagineering*, 2003 WL 22519440, at *3 (E.D. Pa. Oct. 2, 2003)). If, instead, the requests are "overly broad and extend beyond the needs of the preliminary injunction" they should be denied or narrowed. *Id.*

Rule 26(d) allows parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(d)(1). Here, defendants claim that many of the requested materials are protected by deliberative process privilege, a type of executive privilege. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). New Jersey law on the matter is guided by federal deliberative process privilege jurisprudence. *Educ. L. Ctr. v. New Jersey Dep't of Educ.*, 198 N.J. 274, 285 (2009). Generally, the deliberative process privilege "permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* (quoting *In re Liquidation of Integrity Ins. Co.*, 165 N.J. 75, 83 (2000)).[2] The privilege protects

---

[2]   There is no additional requirement that the documents at issue be "confidential" in order to be protected by deliberative process privilege. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993), cited by plaintiffs, is unrelated to deliberative process privilege and is inapposite. Plaintiffs also cite *Rabbitt v. Dep't of Air Force*, 401 F. Supp. 1206, 1209 (S.D.N.Y. 1974), which is at least on-topic, but in no way establishes that there is a separate "confidentiality" prerequisite to the invocation of the deliberative process privilege. (Mot. at 7.)

the public interest by ensuring "free and uninhibited communication within governmental agencies so that the best possible decisions can be reached."[3] *Id.* (citing *Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939, 945 (Ct. Cl. 1958)). Without the privilege, agencies would be "forced to operate in a fishbowl, [and] the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995) (quoting *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994)). The privilege is not absolute, however, and the party seeking discovery "bears the burden of showing that its need for the documents outweighs the government's interest." *Id.* "[I]n all but exceptional cases it is considered against the public interest to compel the government to produce inter-agency advisory opinions." *Educ. L. Ctr.*, 198 N.J. at 287 (quoting *Integrity*, 165 N.J. at 85).[4]

To be covered by the privilege, a requested document "must be predecisional, meaning it was generated before the adoption of an agency's policy or decision, and it must be deliberative in nature, containing opinions, recommendations, or advice about agency policies." *Fisher v. Div. of L.*, 400 N.J. Super. 61, 74 (App. Div. 2008) (quoting *Gannett N.J. Partners, LP v. County of Middlesex*, 379 N.J. Super. 205, 219 (App. Div. 2005)).

---

[3]     Plaintiffs claim that the idea that the disclosure of the documents at issue could be contrary to the public interest "is an oxymoron since the Executive Orders are purportedly for the health of the public, making disclosure of the reasons a rationale for the orders essential to the public interest." (Reply at 13.) It is well established in the case law, however, that there is a public interest in effective governance that underlies the privilege itself.

[4]     Plaintiffs miscite *Wilson v. Brown*, 404 N.J. Super. 557 (App. Div. 2009) in their Reply: "A governor bears the burden of demonstrating a 'substantial' or 'compelling' need for non-disclosure." (Reply at 4 (citing *Wilson*, 404 N.J. Super. at 577–79).) Plaintiffs have it backwards. The court in *Wilson* stated that "the *party seeking such documents bears the burden* of showing a substantial or compelling need for them." *Wilson*, 404 N.J. Super. at 578 (emphasis added). In their initial brief, however, plaintiffs quote *Wilson* correctly. (Mot. at 9.)

5

The Supreme Court has recently clarified what types of material qualify as "predecisional." Broadly, a predecisional document is anything generated before the final decision on the matter. *United States Fish & Wildlife Serv.*, 141 S. Ct. at 786; *see also Ciesla v. New Jersey Dep't of Health & Senior Servs.*, 429 N.J. Super. 127, 140 (App. Div. 2012). If a proposal "dies on the vine," *i.e.*, if there is no final "decision," the last draft proposal is nevertheless deemed predecisional. *Id.* What matters "is not whether a document is last in line, but whether it communicates a policy on which the agency has settled." *United States Fish & Wildlife Serv*, 141 S. Ct at 786. A final document, then, is one that has a "real operative effect" and is the "consummation of the agency's decisionmaking process." *Id.* (citing *Bennett v. Spear*, 520 U.S. 154, 177–178 (1997)) (internal quotation marks omitted).[5] A draft executive order, then, is predecisional, and is protected by the privilege; a final executive order is not predecisional, and is not protected.

Although some documents, such as draft opinions, are clearly "deliberative in nature," the boundaries of the "deliberative process" can be fuzzy. The New Jersey Supreme Court, however, has clearly stated that the privilege encompasses factual material that was part of the process by which government policies are formulated. "[T]he deliberative nature of the material sought must be functionally determined based on the document's nexus to the

---

[5]     Plaintiffs misread *United States Fish & Wildlife Serv.* The Court stated that "The deliberative process privilege shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it." 141 S. Ct. at 785. Plaintiffs argue that this quote means "those opinions, memorandum and other documents referencing information or views on which the Governor relied in making his decision to impose the masking orders must be produced as they 'reflect an agency's. . . final decision.'" (Reply at 5.) The case, however, makes it clear that what falls outside the privilege is the final decision itself, not all "documents that reflect" the final decision. This is logical because all predecisional materials are part of the process by which the final decision is made, and in some sense "reflect" that decision. The law draws no line between predecisional documents *relating to* "preliminary thinking" and predecisional documents *relating to* the "final decision." All are part of the deliberative process and thus potentially protected by the deliberative process privilege.

decision-making process and its capacity to expose the agency's deliberations during that process," rather than on a "purely semantic exercise" of labeling it "fact" or "opinion." *Educ. L. Ctr.*, 198 N.J. at 297 (following *Mapother v. Dep't of Just.*, 3 F.3d 1533 (D.C. Cir. 1993).[6] The purpose of the privilege, then, is to protect the deliberative process as a whole—not just to protect specific draft documents.

Once a court determines that requested materials are protected by the deliberative process privilege, the party requesting the materials has the burden to show that its need for the documents outweighs the government's interest in confidentiality. To determine whether a litigant has demonstrated an overriding need, I consider the following factors: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Educ. L. Ctr.* 198 N.J. at 287 (quoting *Integrity*, 165 N.J. at 85–86).

### DISCUSSION

I first briefly discuss requests (1), (6), and (7). As to these three, the defendants have responded adequately, and no issue of privilege is presented. (Section III.a) I then discuss Requests (2), (3), (4), and (5), as to which the defendants claim the deliberative process privilege. (Section III.b)

### a. Requests (1), (6), and (7)

***Request 1***:  I find that defendants have adequately responded to Request (1). In response to Request (1) (and, in part, Request (5)), Defendants attached a list of the "documents and materials comprising the agency record in the state court appeals" challenging these same EOs.[7] (Opp. at 20; DE 33-2.) These

---

[6]      In *Educ. L. Ctr.*, the New Jersey Supreme Court held that a "Simulation Memo" regarding hypothetical school funding formulas was protected by the deliberative process privilege, even though it contained a great deal of factual data, because its simulations were used in the Department of Education's deliberative process. *Educ. L. Ctr.*, 198 N.J. at 301–02.

[7]      There is parallel litigation in the state courts challenging the issuance of the EOs on the basis of state administrative law. *Gwyneth Murray-Nolan et al. v. Philip D.*

documents are publicly available, and defendants have offered to furnish plaintiffs with copies. (Opp. at 21.) Plaintiffs claim that this response is nevertheless inadequate. The attachment to the defendants' brief, they say, "lists all of the prior executive orders by number but provides no actual discovery of the State's files (aside from a list of selected press releases and 'guidelines')." (Reply at 3 n.1). The list, however, also includes six documents of scientific analysis regarding the spread of COVID-19, which presumably formed part of the basis for the governor's EOs. (DE 33-2 at 4.) Defendants' response to Request (1), I find, was sufficient, particularly in the expedited context of preliminary injunctive relief. Further, any additional materials that constitute the "file" but were not disclosed by the defendants are covered by Requests (2) and (3), discussed below.

**Request 6**: This request sought "Data from the Department of Health as to the number of children in New Jersey with Covid and the number of hospitalizations of children (also including deaths of children) prior to the August 6, 2021 … and thereafter." (DE 30-4.) In response, defendants direct plaintiffs to the state's COVID-19 dashboard, accessible at https://www.nj.gov/health/cd/topics/covid2019_dashboard.shtml, a public website that contains all the information that plaintiffs would reasonably require here. (Opp. at 21.) Defendants object that additional, non-public raw data could reveal the identities of individuals who were infected with COVID-19, and that disclosure would violate their privacy. (*Id.* at 22.) Plaintiffs posit that the data on the public dashboard is "edit[ed]" and "self-selected" (Reply at 15–16), but provide no support for the contention that the publicly available numbers are inaccurate or manipulated. At least at the preliminary-injunction stage, the publicly available data are sufficiently responsive.[8]

---

*Murphy*, A-3632-20, (N.J. Super. App. Div). The administrative record supporting issuance of the EOs was turned over in connection with that state litigation.

[8]     There is no claim asserted that the state has manipulated the publicly available COVID-19 data; this appears to be an ad hoc argument for purposes of this discovery motion. At present, for purposes of these claims and this preliminary injunction

*Request 7*:  Plaintiffs agree that defendants have responded sufficiently to Request (7). (Reply at 15.)

### b.  Requests (2) through (5)

I move on to analyze Requests (2), (3), (4), and (5). In subsection (i), I find that the deliberative process privilege applies to each. In subsection (ii), I find that the plaintiffs' need for the materials does not outweigh the public interest in keeping the materials confidential.

### i.    Application of deliberative process privilege

**Requests (2) and (3)** ask that the defendants produce the following:

(2) Any memoranda, minutes and other documents exchanged within the executive branch that were a part of the *consideration or decision-making process* that led to the promulgation of the Executive Orders;

(3) Any transcripts of meetings between the Governor and other staff or officials *as to the consideration* or promulgation of the EOs;

(DE 33-4) (emphasis added). The phrasing is self-defeating. These Requests virtually define the materials sought as predecisional, deliberative documents.

The requested materials are protected by the deliberative process privilege because they were "generated before the adoption of [the governor's] policy or decision" and are "deliberative in nature, containing opinions, recommendations, or advice about [the governor's] policies." *Fisher*, 400 N.J. Super. at 74; *see also United States Fish & Wildlife Serv.*, 141 S. Ct. at 786 (2021) ("Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position."); *Libertarians for Transparent Gov't v. Gov't Recs. Council*, 453 N.J. Super. 83 (App. Div. 2018) (finding that drafts of meeting minutes were protected by deliberative process privilege).

---

application, the disclosure of the State Department of Health figures, representing the government's officially published data, should be sufficient.

Plaintiffs offer little in response. Sidestepping the legal standard, they instead pose a rhetorical question: "What possible need for 'open, frank discussion' arises when the Governor is simply seeking out what should be broadly accepted medical advice?" (Reply at 4–5 (citations omitted).) This question does little to advance the legal argument. The process here surely involves more than the mere obtaining of "medical advice," which in any event would be privileged if sought as part of the deliberative process. Elsewhere, plaintiffs seem to acknowledge that these materials are covered by the privilege, but argue instead that their need for the materials outweighs the government's interest in confidentiality. (Mot. at 8.) That argument is addressed below.

**Request (4)** asks for production of "Any communications between the administration and the NJEA or other third parties as to masking of schoolchildren or the basis for entry of [the] EOs." (DE 33-4.) Again, the plaintiffs' requests very nearly define the documents sought as predecisional documents related to the deliberative process that led to the promulgation of the EOs.

Plaintiffs claim very broadly that documents "provided to the Governor, his staff or other departments from 'outsiders' … are not protected under any privilege." [9] (Mot. at 15–16.) This is not the case. The deliberative process privilege "extends to a variety of communications between the chief executive and third parties" and "the information exchanged need not be in the nature of formal advice to garner the protection afforded by the privilege." *Wilson v. Brown*, 404 N.J. Super. 557, 576 (App. Div. 2009). In *Wilson v. Brown*, which plaintiffs cite extensively, the Appellate Division of the Superior Court of New

---

[9]    For this proposition, plaintiffs cite *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001). That case does not establish that third party communications are not covered by the deliberative process privilege. Rather, the Court held that a FOIA exemption related to the deliberative process did not exempt certain documents submitted to the Department of the Interior by Indian tribes. The Court held that this FOIA exemption applies narrowly to "inter-agency or intra-agency" communications. Because this case does not involve FOIA, *Klamath Water Users Protective Ass'n* does not control.

Jersey found that communications between the governor and a union president were protected by executive privilege. *Id.*[10] Communications with third parties may be privileged for the same reasons that internal communications are privileged: to enable "free and uninhibited communication" between the governor, here Governor Murphy, and those who advise him in his decisionmaking. *Educ. L. Ctr.*, 198 N.J. at 285. Thus, the deliberative process privilege applies to any communications with third parties that relate to the consideration or formulation of the EOs.

**Request (5)** asks for the production of "[a]ll medical and scientific studies relied upon or consulted by defendants in the creation or promulgation or continuation of [the] EOs." (DE 30-4.) As noted above, in their response to Request (1), the defendants provided studies that they stated were part of the "file" related to the EOs. (DE 33-2.) In addition, defendants provided hundreds of pages of exhibits, including dozens of scientific studies, as part of their brief in opposition to the TRO. (DE 24-3.) It is true that the defendants have not provided any further guidance, for example, as to which study most influenced the creation of the EOs. Such information about the manner in which particular studies were "relied upon or consulted" during the deliberative process, however, falls in the heartland of the privilege. The New Jersey Supreme Court has held that "a record, which contains or involves factual components, is subject to the deliberative process privilege when it was used in the decision-making process and its disclosure would reveal the nature of the deliberations that occurred during that process." *Educ. L. Ctr.*, 198 N.J. at 299 (2009). The role that any particular study played in the deliberative process is protected by the deliberative process privilege.

---

[10]   And the privilege was given broad scope. *Wilson* overruled a lower court decision that had ordered the disclosure of some documents, but excepted "communications [that] relate to topics which do not directly touch upon Ms. Katz's position as president of the union or state employees, but upon issues of general statewide policy." *Wilson v. Brown*, 2008 WL 2400872 (N.J. Super. L. May 29, 2008).

### ii.    Balancing of Interests

That the materials in Requests (2)–(5) are covered by the deliberative process privilege does not necessarily establish that they must be withheld from the plaintiffs. A party may obtain discovery of such materials upon a demonstration "that its need for the documents outweighs the government's interest." *Redland Soccer Club*, 55 F.3d at 854. In that weighing process, a court considers four factors: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Educ. L. Ctr.* 198 N.J. at 287 (quoting *Integrity*, 165 N.J. at 85–86). Here, I perform that weighing analysis, not in relation to an ultimate decision on the merits, but rather in the context of preliminary injunctive relief, sought on an expedited basis. *Better Packages*, 2006 WL 1373055, at *3.

Parties who seek a preliminary injunction must establish that "(A) they are likely to succeed on the merits of their claims, (B) they are likely to suffer irreparable harm without relief, (C) the balance of harms favors them, and (D) relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). At this stage, discovery requests should be narrowly tailored to meet this burden. *Better Packages*, 2006 WL 1373055, at *3. The issue most likely to be affected by the requested discovery is plaintiffs' likelihood of success on the merits. Therefore, I examine the plaintiffs' need for the material they request in the context of whether it could help them prove that they are likely to succeed on the merits of their Constitutional claims. I balance that need against the government's interest in confidentiality.

Plaintiffs urge that the materials are important in some general sense, but do not explain convincingly how the materials will improve their showing of likelihood of success on the merits. Plaintiffs argue that "[a]n emergency health order supposedly intended to protect the entire population from an epidemic condition is not one to be carried out under a mantle of privacy and security."

(Mot. at 8–9 (internal quotation marks omitted).) Similarly, they argue that the materials at issue are "inherently a matter of public discussion." (Mot. at 10.) Such general claims about the importance of disclosure are not sufficient. "A general assertion of a need for full disclosure of the basis for governmental decision making… does not establish a specific or focused need sufficient to overcome the executive privilege." *Wilson v. Brown*, 404 N.J. Super. at 579 (citing *Nero v. Hyland*, 76 N.J. 213, 216–17 (1978)). And it must be remembered, of course, that this is not a federal-law challenge to the wisdom of the EOs, or an administrative-law challenge to the manner of their promulgation. What plaintiffs are attempting to prove is that the State could not constitutionally impose a mask policy, a different matter.

In addition, plaintiffs state that "any claim of 'deliberative' or other privilege must fail since no other source exists for the materials that plaintiffs seek." (Reply at 12.) This argument, if accepted, would allow the exception to swallow the rule. It is probably very often true that governmental defendants are the only source of facts about the deliberative process. To overcome the privilege, however, plaintiffs must demonstrate a "focused need" for the material. They have not done so here.

Material concerning the deliberative process surrounding the development of the mask rule is not centrally relevant to the likelihood of success of plaintiffs' constitutional claims. (Mot. at 8.) The primary claims here, in the Court's estimation, are the claims that the EOs violate First Amendment protections or Equal Protection. But if I were to enjoin the enforcement of the EOs, it would be because their effects—not their underlying motivations, or their provenance—upset the Constitutional balance.

Plaintiffs argue that the Governor's motivations matter, and therefore must be explored. They support that contention with a citation to *Stone v. Trump*, 356 F.Supp.3d 505 (D. Md. 2019).[11] That court granted a motion to

---

[11]     Plaintiffs actually cite the court's decision on defendant's motion for reconsideration, *Stone v. Trump*, 402 F. Supp. 3d 153 (D. Md. 2019), but the

compel deliberative documents related to former President Trump's ban of transgender service members from the United States military. The court found that the President's motivation mattered because the ban was claimed to be "facially discriminatory." *Id.* at 515–16. Animus against a protected class, of course, is never a valid government interest.

Here, in contrast, the claim is not plausibly one of intentional *discrimination* against some disfavored group, which might require delving into motives. The school mask mandate is facially neutral, and does not involve any suspect class. *See West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1365 (10th Cir.), *cert. denied*, 531 U.S. 825 (2000) (students not a suspect class under Equal Protection Clause); *Simmermon v. Gabbianelli*, 932 F. Supp. 2d 626, 631 (D.N.J. 2013) (same). It is based on what is concededly a compelling government interest in "[s]temming the spread of COVID-19." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam). Calling the governor's motives "political" does not alter the essential legal landscape. The question is whether the mask mandate infringes constitutional interests, and, if so, whether the government could nevertheless enact it based on its compelling interest in slowing the spread of COVID-19 among school children. (Reply at 11.) The material sought by plaintiffs would perhaps be relevant to a challenge to the rulemaking process, based on state administrative law (indeed, some of it was produced in that context), but it is far from central to the plaintiffs' claim of unconstitutionality.

As for "compelling need," the plaintiffs have a wealth of information available that may be relevant to their constitutional claims. In addition to the information already disclosed by defendants in discovery and in their briefs, there are hundreds of scientific studies on COVID-19, including many about the spread of COVID-19 in schools. Indeed, the state itself has disseminated that information publicly. In addition, plaintiffs have submitted affidavits from

---

discussion of deliberative process privilege is much more extensive in the Judge Russell's initial opinion, 356 F. Supp. 3d 505.

students, parents, and teachers. (DE 12-3, 12-4, 12-5, 12-6, 12-7, 12-8, 12-9, 12-10, 12-11, 12-12.) The availability of this evidence weighs against compelling disclosure despite the privilege.

Finally, although it is true that the public interest in this issue weighs in favor of disclosure, it is also true that public agencies need to be free to engage in frank and independent discussion regarding COVID-19 policies. COVID-19 mitigation policies, rightly or wrongly, are controversial and politically charged, and they have provoked strong emotions on all sides. Governments around the country and around the world have struggled to balance the need to prevent death and disease with competing goods, including in-person schooling, civil liberties, and economic growth. The deliberative process privilege is intended to shield such politically charged policy discussions, at least until they have culminated in a final declaration of policy that can be evaluated on its merits. Confidentiality allows government officials and advisors to propose, discuss, reject, and accept ideas, without undue outside pressure. This factor weighs against compelling disclosure despite the deliberative process privilege.

To sum up: I find that requests (1), (6), and (7) have been sufficiently responded to by defendants. I find that materials responsive to requests (2), (3), (4), and (5) are covered by the deliberative process privilege and that plaintiffs have not demonstrated a "focused need" to obtain those materials in aid of their preliminary injunction application.

## ORDER

For the reasons set forth above,

IT IS this 21st day of October, 2021

ORDERED that plaintiffs' motion to compel discovery (DE 30) is **DENIED** as to Requests (1), (6), and (7), with which defendants have adequately complied, and **DENIED** on grounds of the deliberative process privilege as to Requests (2), (3), (4), and (5).

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**